## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-00132-MSK-KMT

**MICHELLE CAMPBELL,**

    Plaintiff,

v.

**BALL CORPORATION CONSOLIDATED WELFARE BENEFIT PLAN,**

    Defendant.

## ORDER ON ADMINISTRATIVE RECORD

**THIS MATTER** comes before the Court upon review of the denial by Aetna Life Insurance Company ("Aetna"), acting as Claims Administrator for the Defendant, of long-term disability benefits to the Plaintiff under an insurance plan governed by the Employment Retirement Income Security Act of 1974, 28 U.S.C. § 1001, *et seq.* ("ERISA"). The parties filed an Administrative Record (**# 21**). The Plaintiff ("Ms. Campbell") moved for judgment on the Administrative Record (**# 39**), reflecting the parties' agreement that the matter should be determined on the briefs (**# 30, 38, 43**).

### I.  Jurisdiction

The Court has jurisdiction pursuant to 29 U.S.C. § 1132, which allows a participant in an ERISA plan to bring suit to enforce the participant's rights or to recover benefits due to the participant under the terms of the plan.

**II.     Facts**

The Court briefly sketches the relevant facts here, elaborating as necessary in its analysis. Ms. Campbell worked at Ball Aerospace and Technologies Corporation ("Ball") from 1994-2002. From 1998-2002, Ms. Campbell served as an Operations Analyst. During her employment, she was covered by a long-term disability policy. In May 2002, Ms. Campbell left employment and began to receive long-term disability benefits from the Defendant because of recurring cluster migraine headaches. The Social Security Administration also determined that she was entitled to monthly disability benefits. Aetna has served as the Defendant's independent Claims Administrator since 2009.

Aetna conducts periodic reviews of claimants receiving ongoing disability benefits and in 2011, it had Dr. Janice Miller, a neurologist, conduct a medical examination of Ms. Campbell. On Aetna's Capabilities and Limitations Worksheet, Dr. Miller marked that Ms. Campbell was capable of sitting for up to five hours of a workday, and that she had similar limitations regarding her ability to do fine manipulation. Dr. Miller also marked that Ms. Campbell could lift up to five pounds for up to five hours per day, and up to ten pounds "occasionally." The documents that Aetna sent to Dr. Miller defined a "Sedentary" occupation in terms of the claimant's "Strength Level," only requiring "occasional" lifting of one to ten pounds. Dr. Miller wrote that "I am not seeing any objective evidence that [Ms. Campbell] would not be able to work in a relatively sedentary position as she has."

Effective July 1, 2012, a Disability Benefits Manager employed by Aetna terminated Ms. Campbell's claim for disability benefits. Aetna's denial letter to Ms. Campbell stated that her plan "defines total disability" as the inability to perform her own occupation and the inability to earn more than eighty percent of her pre-disability earnings. In the initial denial of Ms.

Campbell's claim, Aetna stated that it was "terminating" Ms. Campbell's claim for disability benefits effective June 30, 2012, on the basis that she was "not totally disabled from performing [her] own occupation." The letter said that Ms. Campbell was employed by Ball "as an Operations Analyst," which a Vocational Rehabilitation Consultant had concluded was a "sedentary" occupation according to the Dictionary of Occupational Titles ("DOT"). The letter relied upon Dr. Miller's report, which Aetna construed to conclude that Ms. Campbell could work "an 8 hour day, 40 hour week in a sedentary capacity." The determination was contrary to the assertions of Ms. Campbell's treating physicians, Dr. Joshua Renkin and Dr. Richard Smith.

Following Ms. Campbell's appeal of the termination decision, Dr. Stephen Gerson, specializing in psychiatry, and Dr. Eric Kerstman, specializing in physical medicine and rehabilitation, provided physician reviews at Aetna's request. Dr. Gerson's Physician Review states "we have no data to validate substantial functional impairment on a psychiatric or cognitive basis from 7/1/12 through 11/19/12." Dr. Kerstman's review asserts that "there is clinical evidence to support the claimant's . . . medical conditions of chronic pain, cervical dystonia, and intractable headaches. However, there is no clinical evidence to support that any of these medical conditions individually or in combination are causing significant impairment, or require restrictions and/or limitations that would preclude the claimant from performing her Sedentary PDL occupation as a Computer Technician." Dr. Kerstman also wrote that there was "no evidence to support" the restrictions that Dr. Miller noted on the Capabilities and Limitations Worksheet concerning Ms. Campbell's ability to work.

An Appeals Specialist employed by Aetna issued a decision affirming the termination of Ms. Campbell's benefits. On appeal, Aetna purported to apply the "plan" that was "in effect at the time of Ms. Campbell's disability commencement," although the terms of that plan had

changed in the interim. The appeal determination defined total disability as: "[Y]ou must be unable to perform any job for which you are reasonably qualified by training, education, or experience." The decision conceded "that Ms. Campbell has chronic pain, chronic and intractable headaches, and dystonia as her primary diagnoses, as well as diagnosed depression, knee pain, neck pain, and positional vertigo as secondary diagnoses." It stated that she had been "employed as a Computer Technician at the time she stopped working," which it repeatedly referred to as "a sedentary occupation." The decision concluded that none of Ms. Campbell's "diagnoses, alone or in combination, preclude Ms. Campbell from performing her usual job or any job for which she is reasonably qualified by her education, training and experience." Ms. Campbell seeks relief from this determination.

### III.     Standard of Review

In *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110–11 (2008), the Supreme Court summarized its prior rulings setting forth the standard of review in suits to recover benefits under an ERISA plan: (i) the court must conduct a *de novo* review of the determination unless the plan provides to the contrary; (ii) if the plan provides discretionary authority to the Plan Administrator to make eligibility determinations, the court should instead apply a deferential arbitrary and capricious standard of review; and (iii) if the Plan Administrator is operating under a conflict of interest, the nature and extent of that conflict must be "weighed as a factor" in determining whether the Plan Administrator has abused his or her discretion. *See Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231-32 (10th Cir. 2012). In addition, pursuant to precedent of the United States Court of Appeals for the Tenth Circuit, certain procedural irregularities may require the Court to apply *de novo* review. *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

If a court determines that the arbitrary and capricious standard applies, it will reverse a determination if the Plan Administrator's decision is not supported by substantial evidence in the record, its construction of policy language is unreasonable, or if the determination was made in bad faith. *See Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009). Under that standard, a determination does not need to be the best or only logical resolution, but it does need to be reasonably supported by the record. *Nance v. Sun Life Assur. Co.*, 294 F.3d 1263, 1269 (10th Cir. 2002). Review is limited to the materials compiled by the administrator in the course of making its decision – that is, to the Administrative Record. *See Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013). However, the Court only needs to consider the specific grounds upon which the administrator relied in its administrative denial of benefits. *Spradley v. Owens-Ill. Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1141 (10th Cir. 2012).

The parties dispute which standard of review the Court should apply. Normally, the Court would resolve this dispute by first looking to the relevant plan documents. The parties, however, also disagree about which plan documents apply. Ms. Campbell asserts the relevant documents were those in place at the time she commenced receiving disability, the Ball Corporation Consolidated Welfare Benefit Plan for Employees, restated as of January 1, 1998, as supplemented by the January 2002 Long-Term Disability Plan for Salaried Employees. The Defendant, by contrast, argues that revised documents apply, the Ball Corporation Consolidated Welfare Benefit Plan for Employees, restated as of January 1, 2003, as supplemented by the January 1, 2011 Long-Term Disability Plan Summary of Benefits for Salaried Employees.

The Court notes that in Ms. Campbell's appeal, Aetna appears to have conceded that Ms. Campbell's disability benefits are controlled by the "plan[] in effect at the time of Ms.

Campbell's disability commencement." The Defendant, therefore, may be estopped from arguing that Ms. Campbell's claim is governed by the newer policy documents. Nonetheless, the Court does not need to decide which plan applies. Under the terms of both plans, the Court finds that Aetna's determination was arbitrary and capricious.

### IV. Analysis

#### a. Plan Terms

The Court starts with the language of the plan documents. The 2011 Summary of Benefits states that an individual is:

> considered totally disabled due to illness or injury if [she is] unable to
> - Perform the essential duties of [her] own occupation
> - Earn more than 80% of [her] "pre-disability earnings"

(Note that there is no text in the Plan indicating whether the two bulleted points are to be considered conjunctively or disjunctively.) Similarly, the 2002 Long-Term Disability Plan for Salaried Employees dictates that an individual is:

> considered totally disabled if [she is] unable, due to illness, pregnancy, or injury, to:
> - Perform the material duties of [her] own occupation; or
> - Earn more than 80% of [her] "pre-disability earnings."

#### b. Denial Determinations

In the initial termination of Ms. Campbell's benefits, Aetna appeared to rely on the 2011 Summary of Benefits, defining "total disability" as being "unable to perform essential duties of own occupation <u>and</u> unable to earn more than 80% of pre-disability earnings." (Emphasis added.) The letter continues that no "objective medical data" was "provided that would preclude you from working in your own occupation." It notes that Ms. Campbell was referred for a medical evaluation and suggests that "[t]he results of that evaluation found that you were able to work an 8 hour day, 40 hour week in a sedentary capacity." Pursuant to the review of a

Vocational Rehabilitation Consultant, the letter states that Ms. Campbell's own occupation, of Operations Analyst, "is considered sedentary according to the" DOT.  Aetna terminated Ms. Campbell's claim for disability benefits effective June 30, 2012, because she was "not totally disabled from performing [her] own occupation."

By contrast, the letter denying Ms. Campbell's appeal suggests that it is applying the long-term disability plan "in effect at the time of Ms. Campbell's disability commencement."  It offered a different definition of total disability: "[Y]ou must be unable to perform any job for which you are reasonably qualified by training, education, or experience."  The letter also relied on the classification of Ms. Campbell's position as sedentary, and suggested that no clinical evidence supported a conclusion that Ms. Campbell's medical conditions "require restrictions and/or limitations that would preclude her from performing her sedentary occupation as a Computer Technician."  Aetna also wrote that "[r]eview of the voluminous records documented that there are no significant impairments supported by Ms. Campbell's reported symptoms, physical examination findings, or diagnostic testing to support that she would not be capable of performing a sedentary occupation from July 01, 2012."  The analysis concludes that,

> while we concur that Ms. Campbell has chronic pain, chronic and intractable headaches, and dystonia as her primary diagnoses, as well as diagnosed depression, knee pain, neck pain, and positional vertigo as secondary diagnoses, no evidence has been submitted which would allow us to conclude that any of . . . these diagnoses, alone or in combination, preclude Ms. Campbell from performing her usual job, or any job for which she is reasonably qualified by her education, training and experience.

### c.  Definition of Disability

The Court thus encounters three definitions of total disability.  The first and second are from the plan documents, and Aetna appears to have relied upon the definition from the 2011 Summary of Benefits in its initial termination letter.  The third definition is that which Aetna

7

stated in the appeal. Aetna did not explain the change in the definition between the initial determination and the appeal. Moreover, the definition that Aetna applied in the administrative appeal is not supported by either set of plan documents. Using the standard was thus arbitrary and capricious as an unreasonable construction of the policy documents.

Aetna, however, stated that Ms. Campbell was not precluded from working her usual job, relevant under the first prong of the definition of total disability under both sets of plan documents. Out of an abundance of caution, the Court turns to consider that conclusion.[1]

### d. Application of the Plan Definitions

Where a disability plan defines disability in terms of the claimant's ability to perform the essential duties of her own occupation, the Tenth Circuit has taught that an administrator is required to consider the claimant's actual job duties in analyzing whether the claimant is disabled. *Bishop v. Long Term Disability Income Plan of SAP Am., Inc.*, 232 F. App'x 792, 794-95 (10th Cir. 2007) (unpublished); *see also Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1284-85 (10th Cir. 2002). The job description for Ms. Campbell's occupation of Operations Analyst lists the following "Essential Functions and Responsibilities":

- Implement smart-scheduler and provide the necessary technical support.
- Develop and maintain disaster recovery requirements and plans.
- Determine the causes of computer operations malfunctions.
- Provide training and development of Service Bureau personnel.
- Monitor the CPU and its related hardware and software to ensure its effective and efficient operation.
- Collect data for performance reporting of the computer and related hardware and software.
- Prepare computer operations documentation and ensure all documentation is current and meets standards.

---

[1] The Court notes that Aetna, in its appeal letter, referred to Ms. Campbell's position as "Computer Technician." The Defendant has not demonstrated that "Operations Analyst" and "Computer Technician" are the same position with the same essential job functions. The record evidence and the Defendant's brief both support the conclusion that Ms. Campbell was employed as an Operations Analyst. This represents a second material unexplained deviation between the initial determination and the appeal.

      • May install hardware and software.
      • Provide first point of contact for all after-hours computer operations and customer service support.
      • Provide programming support and documentation for operations development and technical service area.
      • Monitor network status/resources to solve network hardware.
      • Coordinate all activities related to change and/or additions to software or hardware configurations.
      • Maintain a regular and predictable work schedule.
      • Establish and maintain effective working relationships within the department, the SBU/SSU and the Company. Interact appropriately with others in order to maintain a positive and productive work environment.
      • Perform other duties as necessary.

The record is devoid of any assessment of Ms. Campbell's ability to perform any of these essential functions. Dr. Miller wrote that she had read Ms. Campbell's job description, but the analysis in her report, as in the report of Dr. Kerstman, can most charitably be read to relate to Ms. Campbell's ability to work a generic "sedentary occupation." Dr. Gerson similarly did not address the essential duties listed in Ms. Campbell's job description. Thus, the evidence that Aetna reviewed reflected that Ms. Campbell could do "sedentary" work, but was not related to the duties of Ms. Campbell's own occupation, at least beyond the arguably sedentary nature of an Operations Analyst position. In its initial termination and appeal letters, Aetna did not offer analysis of Ms. Campbell's ability to perform the functions listed above or their constituent physical tasks, such as reading from a screen, typing, using a telephone, manipulating objects with fine motor control, etc. Pursuant to Tenth Circuit case law, that is arbitrary and capricious without regard to which set of plan documents controls.

Under both sets of plan documents, the definition of total disability contains two prongs. Aetna does not argue that its determination is justified on the grounds that Ms. Campbell can earn more than eighty percent of her pre-disability income. The Court notes that there is no assessment of her prior earnings or her earning potential in either the initial termination or the

9

appeal letter.  Thus, the termination of Ms. Campbell's benefits was not justified under either prong of the definition included in either set of the plan documents.  The Court concludes that it was arbitrary and capricious.

### e. Remedy

The Tenth Circuit explains that, pursuant to a determination that a plan administrator has arbitrarily and capriciously terminated a claim for benefits, a district court can, in its discretion, either remand the case to the administrator for another evaluation of the case, or award a retroactive reinstatement of benefits.  *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175-76 (10th Cir. 2006).  Remand to the Administrator for further action is unnecessary if the evidence clearly shows that the administrator's actions were arbitrary and capricious or if it would be unreasonable for benefits to be denied on any ground.  *Caldwell*, 287 F.3d at 1289.  However, if the administrator did not make adequate findings or adequately explain the grounds for its decision, remand for further findings and explanation is appropriate.  *DeGrado*, 451 F.3d at 1175-76.  In determining the appropriate remedy, Tenth Circuit case law reflects that a court does not need to consider potential grounds for termination of a claimant's benefits upon which the administrator did not rely in the administrative proceeding.  *Spradley*, 686 F.3d at 1142.

The present matter does not simply involve inadequate findings or an inadequate explanation of the grounds for Aetna's decision.  Aetna changed the definition of total disability upon which it relied between the initial termination and the appeal.  It settled upon a standard without support in the record.  Furthermore, it analyzed whether Ms. Campbell was capable of performing a sedentary occupation, without regard to the actual terms of the plan documents.  The evidence clearly shows that Aetna's actions were arbitrary and capricious.  The Court concludes that reinstatement of benefits is appropriate in this case.

Moreover, Ms. Campbell has received benefits since 2002. This was a reevaluation by Aetna, and should it have doubts that she continues to meet the applicable standard, it can engage in another process – properly conducted – to determine whether that is the case. The Court directs that Ms. Campbell's benefits should be reinstated, retroactive to July 1, 2012.

For the foregoing reasons,

**IT IS HEREBY ORDERED THAT**

The Motion for Judgment on the Administrative Record (**# 21, 39**) is **GRANTED**. The Court awards Ms. Campbell reinstatement of her benefits, retroactive to July 1, 2012. Ms. Campbell shall file a motion addressing the appropriateness of an award of attorney's fees and prejudgment interest, and if appropriate, the proper interest rate, within fourteen days from the date of this Order, at which time the Court will enter judgment in Ms. Campbell's favor.

Dated this 30th day of September, 2014.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge